```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
───────────────────────────────

**UNITED STATES OF AMERICA,**

      - against -

**LAQUAN WILLIAMS,**

                  Movant.

───────────────────────────────

17-cr-402 (JGK)

ORDER

**JOHN G. KOELTL, District Judge:**

The Court has received the attached letter from the movant, Laquan Williams. The Court cannot intervene in a prison disciplinary proceeding. The defendant correctly points out that if he is dissatisfied with the results of a prison disciplinary proceeding, his remedy is to raise his appeal internally and then, if he is dissatisfied with his administrative remedies, to bring a Section 2241 petition.

The Court has not received a response to its November 6, 2020 Order, also attached, regarding the appointment of William's former counsel to represent him for purposes of a motion for compassionate release. ECF No. 168. The parties should advise the Court as to any motion for compassionate release. The Clerk is asked to mail a copy of this Order to the defendant.

**SO ORDERED.**

**Dated:**    **New York, New York**
            **March 5, 2020**                                /s/ John G. Koeltl
                                                                             John G. Koeltl
                                                                         **United States District Judge**



To: Judge G. Koeltl
From: Laquan Williams 79176-054
Date: February ___, 2021

Good morning or afternoon Judge Koeltl with all do respect i am writing you on behalf of f.b.o.p. On March 9, 2019 i enroll in r-dap, r-dap takes 1 year off of my sentence after completion. It was September 3, 2019 i went to the s.h.u for an unrelated incident i was assaulted in general population I was in Specail housing unit until September 19, 2019. When being process in the shu you are strip search an given orange Jumpers. I left the s.h.u went back to the compound went back to r-dap i completed r-dap December 9, 2019 I was suppose to get my halfway house date from march 9, 2020 to June 7, 2020 i was put in for 6-9 month. I was suppose to be home last year i had recieve an accident report on march 5, 2020. It said i possess was in possession of a hazardous tool September 5, 2019 at 2:30 in Allenwood f.c.i. I wasn't treated fair at the D.H.O hearing the captain warden, assist warden, S.I.S of the prison took my lock-up order out of my central would not give it to me I ask my counselor, unit manager they told me they don't see the detention order from September 3, 2019 after i lose the hearing i sent on april 15, 2020 i waited five months letter i ask to view my property i ask for my property sheet from 9-3-2019 the officer gave it to me Now i complain to the warden Lt over heard wat i was saying in got it from s.i.s After i appeal my d.H.O hearing to the northeast regional they said they will give me a response on Oct 8, 2020 they never responded so i went to the central office in file still no answer. If i file a 2241 Its gonna take to long i am stuck in a hard place for something i did not do i have proof. Thanks for your time please help me Sincerly, Laquan William

# DISCIPLINE HEARING OFFICER REPORT

BP-A0304

Dept. of Justice / Federal Bureau of Prisons

| | |
|---|---|
| Institution: ALLENWOOD MED FCI | Incident Report Number: 3374040 |
| NAME OF INMATE: WILLIAMS, LAQUAN | REG.NO.: 79176-054    UNIT: UNIT 1RDAP |
| Date of Incident Report: 03-05-2020 | Offense Code(s): 108 |
| Date of Incident: 09-05-2019 | |

Summary of Charges:
**108 -- POSSESSING A HAZARDOUS TOOL.**

### I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on **03-27-2020** at **07:35** (by staff member) **R. Lund**

B. The DHO Hearing was held on **04-15-2020** at **08:53**

C. The inmate was advised of the rights before the DHO by (staff member): **s white** on **04-07-2020**

and a copy of the advisement of rights form is attached.

### II. STAFF REPRESENTATIVE

A. Inmate waived right to staff representative:   [Yes] __   [No] X

B. Inmate requested staff representative and _____ appeared.
**Ms. K. Dewald**

C. Staff Representative's Statement:
Ms. Dewald appeared as a staff representative on behalf of Inmate WILLIAMS during the DHO hearing. Ms. Dewald met with Inmate WILLIAMS prior to the DHO hearing and discussed the specifics of the case with the inmate. Ms. Dewald stated Inmate WILLIAMS made no specific request of them as a staff representative in this case. Ms. Dewald stated they had no first-hand knowledge of the incident in this case. Ms. Dewald stated they had no further information to present, nor statement to make regarding this case.

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:
**NA**
_____ was appointed.

E. Staff representative **NA**

### III. PRESENTATION OF EVIDENCE

A. Inmate ( ) admits   ( X ) denies the charge(s).

B. Summary of Inmate Statement:
At the onset of this hearing, this inmate was advised of his Rights before the DHO, indicated he understood them and chose to provide the following statement: WILLIAMS stated, "We are from the same neighborhood and know the same people, I didn't use the phone." No procedural issues were cited and no documentary evidence was provided for consideration. The DHO noted a delay in the discipline process. This was due to the report being rewritten. The DHO did not believe this delay infringed upon the inmate's ability to defend himself against the charged behavior, nor was it

Replaces BP-304(52) of Jan 88

Prescribed by P5270

# DISCIPLINE HEARING OFFICER REPORT



BP-A0304
Dept. of Justice / Federal Bureau of Prisons

addressed it as an issue. Staff Representative, Ms. Dewald was disclosed all documents in reference to this case.

C. Witnesses

The inmate waived right to witnesses.   [Yes] X   [No] __

1. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):

   N/A

2. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):

   NA

3. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below):

   NA

D. Documentary Evidence. In addition to the Incident Report and Investigation, the DHO considered the following documents:

   Duties of Staff Representative -- (BP-A306)
   Incident Report - Lab Report, Forensic -- (BOP-IRLBF)
   Warden UDC Extension Memo -- (UDC-EXT-M)
   Incident Report - Chain of Custody, Contraband -- (BOP-IRCCC)
   Incident Report - Staff Memorandums -- (BOP-IRMEM)
   Incident Report - Photographs -- (BOP-IRPHO)

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

   NA

IV. FINDINGS OF THE DHO

   X  A. The act was committed as charged.       — C. No prohibited act was committed:
   —  B. The following act was commmitted:          Expunge according to inmate
                                                    discipline PS.

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations written documents, etc.)

This incident report was rewritten for clarification. Inmate Williams, Laquan, reg. no. 79176-054, is being charged with Code 108, Possession, Introduction, of a Portable Telephone. Specifically, on September 2, 2019, a cellular telephone was recovered from within the secure perimeter at ALM. This cell phone was sent to an outside forensic laboratory to be analyzed. On March 5, 2020, I reviewed the cellular telephone report and discovered Williams utilized the cell phone to contact telephone numbers: 718-801-7394

Replaces BP-304(52) of Jan 88
Prescribed by P5270

# DISCIPLINE HEARING OFFICER REPORT



BP-A0304

Dept. of Justice / Federal Bureau of Prisons

and 718-709-1270 several times. When I conducted a search in the BOP communication systems, both telephone numbers show up as being linked to Williams. The search also shows Williams was the only inmate at ALM communicating with these numbers. Inculpatory evidence in the form of a memorandum from Office Sura dated 9/5/19 corroborated the evidence cited in this report. Office Sura writes: On 9/5/19 at 7:15 pm Inmate TEJADA was on close observation status in SHU. At 7:30 pm TEJADA stated he couldn't hold it anymore and wanted to take the contraband out himself to give to the operations lieutenant. TEJADA retrieved the contraband. The contraband was identified as a black cell phone. A photograph of the cellphone supports the chain of custody form and proper handling of the phone from discovery to its current disposition. The forensic report gathered from the cellular telephone support the use by WILLIAMS. WILLIAMS' contact number is stored in the phone. WILLIAMS is the sole inmate in the Federal Bureau of Prisons with the same contact telephone number stored in the cell phone. The link analysis between WILLIAMS and the use of the cell phone is supported in the forensic report. The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report. Upon questioning by the DHO, WILLIAMS denied the charge. He elaborated upon his plea by stating, he didn't use the cellphone . After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, support(s) the finding, WILLIAMS committed the prohibited act(s) of Possession of a Hazardous Tool (Cellphone), Code(s) 108 , on 9/5/19,at or about 1430, in , at FCI Allenwood.

VI.  SANCTION OR ACTION TAKEN
108 - LP VISIT 2 YEARS, 108 - LP PHONE 2 YEARS, 108 - LP EMAIL 2 YEARS, 108 - FF NVGCT 100 DAYS, 108 - DS 90 DAYS, 108 - DIS GCT 41 DAYS

VII. REASON FOR SANCTION OR ACTION TAKEN
WILLIAM s use of a cellular telephone threatened the orderly running of the correctional facility. For inmates to utilize items of this type, not known to be provided to them through institutional channels indicates defiance and refusal to follow established and known policy. Limits are placed on inmate property to persuade them not to possess unnecessary or potentially dangerous items. These can be potentially be used to facilitate escape, contraband introduction and/or harm to another through unrestricted access to the general public.  The DHO finds the charge for code 108 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

Prescribed by P5270           Replaces BP-304(52) of Jan 88

BP-A0308
DEC 16

ADMINISTRATIVE DETENTION ORDER

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

ALM       Institution

Date/Time:  9-03-2019 12:15 PM

TO: Special Housing Unit Officer _____ (Name/Title)

FROM: R. Troutman, Lieutenant

SUBJECT: Placement of  Williams, Laquan  , Reg. No. 79176-054 (1B)  , in Administrative Detention.

You have been placed in administrative detention status for the following reason(s):

_____ (a) Is pending classification or reclassification; or

_____ (b) Is in holdover status pending transfer to a designated institution or other destination; or

✓ (c) Removal from general population. Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:

_____ (1) Is pending an investigation for a violation of Bureau regulations;

✓ (2) Is pending an SIS investigation;

_____ (3) Is pending investigation or trial for a criminal act;

_____ (4) Transfer to another institution or location (local hospital/NPO, etc.);

_____ (5) Is to be admitted to Administrative Detention for protection:

_____ (I) Since the inmate has requested admission for protection;

I hereby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No.: _____

Staff Witness Printed Name/Signature: _____

_____ (II) Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission; referral of the necessary information will be forwarded for an appropriate hearing by the SRO.

_____ (6) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

Administrative detention status is an administrative status which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public. Administrative detention status is non-punitive, and can occur for a variety of reasons. Your placement is because*
assault victim

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on (date / time) 09-03-2019 12:30 pm                                      Date 9-03-2019

R. Lund, Lieutenant
Staff Witness Signature/Printed Name                                                                                          Date _____

24 hour Supervisor Review Signature/Printed Name

* In the case of DHO action, reference to that order is sufficient. In other cases, the correctional supervisor will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of classification or holdover status); Copy - Captain; Copy - Unit Manager;
Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

Prescribed by P5270

(Replaces BP-A0308 of AUG 2011)

PDF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

LAQUAN WILLIAMS,

            Movant.

17-cr-402 (JGK)

MEMORANDUM OPINION
AND ORDER

**JOHN G. KOELTL, District Judge:**

The movant, Laquan Williams, has moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court has previously denied the movant's application for the appointment of counsel in connection with the application for compassionate release without prejudice to renewal.

Upon review of the papers, it is apparent now that counsel would be of assistance in this case. The Government alleges that the movant has failed to exhaust his administrative remedies by at least making a request to the Bureau of Prisons and waiting for 30 days after the application, as required by 18 U.S.C. § 3582(c)(1)(A). ECF No. 163. The failure to exhaust his remedies would be fatal to the application. See, e.g., United States v. Ogarro, No. 18-CR-373, 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020); United States v. Roberts, No. 18-CR-528, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Monzon, No. 99-CR-157, 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). But the exhaustion requirement can be satisfied by making an appropriate

application and waiting 30 days for a response. Moreover, the movant has asserted in his papers that he did make such a request to the Warden of FCI Allenwood Medium, but has not filed proof to support this assertion. ECF No. 157. Further, the movant does not support the application with any detailed explanations of his medical conditions that would make his continued incarceration particularly difficult, and he does not discuss why application of the factors under section 3553(a) would support the application. See 18 U.S.C. § 3582(c)(1)(A) (requiring courts to "consider the factors set forth in" 18 U.S.C. § 3553(a)). However, the movant does point to an outbreak of COVID-19 at the prison where he is located.

Therefore, the Court will appoint counsel for Williams to assist with his compassionate release motion, as a continuation of counsel's representation pursuant to 18 U.S.C. § 3006A. See United States v. Rice, No. 83-CR-150-3, 2020 WL 4505813, at *2 (S.D.N.Y. Aug. 5, 2020). In deciding whether to exercise the discretion to appoint counsel, including for post-conviction motions, courts in the Second Circuit "consider the same factors as those applicable to requests for pro bono counsel made by civil litigants," including "the likelihood of success on the merits, the complexity of the legal issues and the movant's ability to investigate and present the case." Jerez v. Bell, 2019 WL 1466899, at *4 (citing Cooper v. A. Sargenti Co., 877 F.2d

2

170, 171-72 (2d Cir. 1989)). The Court has considered the factors and is concerned over the conflicting representations in the papers and the apparent inability of the movant to present the details of his conditions warranting relief. The Court will therefore appoint the former counsel for Williams to represent him in connection with this application. Any supporting papers should be submitted by December 11, 2020. The Government may submit any additional responsive papers by December 21, 2020.

**SO ORDERED.**

Dated:    **New York, New York**
          **November 6, 2020**

_____
John G. Koeltl
**United States District Judge**